UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TELEVISION EDUCATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONTRACTORS INTELLIGENCE SCHOOL, INC.; CONTRACTORS PUBLISHER, INC.; LEONID VORONTSOV; OKSANA VORONTSOV; and DOES 1 through 25; <br><br> Defendants. | CIV. NO. 2:16-1433 WBS EFB <br><br> <u>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION</u> |

----oo0oo----

Plaintiff Television Education, Inc. brought this action against defendants Contractors Intelligence School, Contractors Publisher, Leonid Vorontsov, and Oksana Vorontsov (collectively "defendants") for alleged copyright infringement. (Second Am. Compl. ("SAC") (Docket No. 45).) Before the court is plaintiff's Motion for a preliminary injunction. (Pl.'s Mot. (Docket No. 49).)

1

I. Factual and Procedural Background

Plaintiff sells contractor's license exam preparation materials to private schools and businesses. (Id., Mem. ("Pl.'s Mem.") at 1 (Docket No. 19).) Plaintiff allegedly created and owns copyrights to a number of test preparation manuals and practice exams, and has "pending copyright applications in numerous other educational courses and materials." (SAC ¶¶ 10, 15.) From 2011 through 2014, plaintiff executed agreements to lease and sell its educational materials to Contractors Intelligence School "for use in [the school's] license examination preparation courses." (Id. ¶ 18.) According to plaintiff, the agreements stated that Contractors Intelligence School "will not 'copy, plagiarize, paraphrase, or duplicate' any of the educational materials owned by Television Education . . . or allow any of its employees or any other person or firm to do so." (Id. ¶ 20.)

From 2010 to 2016, Contractors Intelligence School allegedly "cop[ied]," "plagiariz[ed]," and sold "knock-offs" of plaintiff's materials in violation of the parties' agreements and federal copyright law.[1] (See id. at 10-17.) The "knock-offs" were allegedly marketed as original works of Contractors Publisher, an affiliate of Contractors Intelligence School. (Id. Ex. A, Cease and Desist Letter at 2.) Plaintiff alleges that defendants continue to plagiarize and create "knock-offs" of its

---

[1] Plaintiff alleges defendants copied or plagiarized plaintiff's B, C-33, C-36, C-8, C-10, C-15, C-20, C-27, and C-39 Manuals; portions of the "Math" section in plaintiff's manuals; and plaintiff's law and trade practice tests.

2

materials despite receiving its cease and desist letter in June 2016.  (Id. ¶¶ 57-58.)

On June 23, 2016, plaintiff filed this action. Plaintiff first amended its complaint in September 2016 and then again in April 2017.  Plaintiff's second amended Complaint alleges a single cause of action "for copyright infringement under . . . 17 U.S.C. section 101 et seq." (Id. ¶ 1.)  The court previously granted, in part, plaintiff's Motion to strike various affirmative defenses from defendants' Answer. (See December 12, 2016 Order (Docket No. 27).)  Plaintiff now moves to preliminarily enjoin defendants from copying or plagiarizing plaintiff's materials and disseminating or using the purportedly copied manuals and test.  (Pl.'s Mot.)

II. Discussion

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citation omitted).  In order to obtain a preliminary injunction, the moving party must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

A. Likelihood of Success on the Merits

Plaintiff alleges that defendants infringed plaintiff's copyrights when they used practice test questions and manuals that contain material that are substantially similar or verbatim

3

copies of plaintiff's material. To state a claim for copyright infringement, the plaintiff must show: "(1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a)).

### 1. Ownership of a Valid Copyright

A certificate of registration is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Plaintiff has sufficiently demonstrated ownership of the copyrighted manuals by providing certifications of registration issued by the Copyright Office. (See Cohen Decl. ¶¶ 4-5, Exs. A-B.)

Plaintiff also claims copyright ownership over test questions that defendants allegedly hacked to obtain in 2010. Defendants no longer use their 2010 practice test, but plaintiff argues that defendants' 2016 practice test uses several dozen questions that are substantially similar or verbatim copies of defendants' 2010 questions.

Plaintiff provides no evidence that it has a valid copyright over the allegedly hacked 2010 questions. It has not provided its version of the test that it claims defendants copied in 2010. Plaintiff submitted both the 2010 and 2016 versions of defendants' questions and a side-by-side comparison of the two versions, (Cohen Decl., Exs. K-M), but provides no evidence that these questions were part of plaintiff's copyrighted material. This is not enough to show that the plaintiff had any copyright interest in the questions at hand.

4

Because plaintiff fails to submit evidence that one of its copyrights protects the questions at issue, plaintiff has not shown that it is likely to succeed on the merits of its copyright infringement claim for the practice test questions.

### 2. Violation of Copyright Owner's Rights

In order for plaintiff to prevail on its claim of copyright infringement, it next must present evidence of copying by defendants. Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994). "Copying may be shown by circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work." Id. Between 2011 and 2016, defendants purchased and had access to copies of plaintiff's B, C-8, C-10, C-15, C-20, C-27, C-33, C-36, and C-39 manuals. (Cohen Decl. ¶ 7.)

"To determine whether two works are substantially similar, a two-part analysis--an extrinsic test and an intrinsic test--is applied." Rice v. Fox Broad. Co., 330 F.3d 1170, 1174 (9th Cir. 2003). "The extrinsic test is an objective comparison of the specific expressive elements, and the intrinsic test is a subjective comparison that focuses on whether an ordinary, reasonable audience would find the works substantially similar in total concept and feel." Gold Glove Prods., LLC v. Handfield, 648 Fed. App'x 679, 680 (9th Cir. 2016) (citing Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir. 2010)).

As to the extrinsic test, the court "must distinguish between the protectable and unprotectable material because a party claiming infringement may place 'no reliance upon any

similarity in expression resulting from unprotectable elements.'"
Rice, 330 F.3d at 1174 (citing Apple Computer, 35 F.3d at 1446).

There is no valid copyright in facts. Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, 347-48 (1991). "Factual compilations, on the other hand, may possess the requisite originality." Id. at 348. This includes "choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity." Id. In comparing the materials, the court must compare plaintiff's materials as a whole to the allegedly infringing works.[2] See See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983) (per curiam).

In various exhibits, plaintiff points to 93 purported instances of copying or paraphrasing in defendants' nine manuals that consist of over 400 pages. There are several deficiencies in plaintiff's claim, including the total amount of purported copying, the manuals largely contain facts, and plaintiff has failed to show there is a substantial amount of very close paraphrasing. Plaintiff thus has not shown that it is likely to succeed on the merits of its claim.

First, the total amount of alleged copying does not rise to the level of a substantial portion of the work as a whole. In Meridian, 426 F. Supp. 2d at 1115, the court found

---

[2] While the court may consider selected similarities between one manual and another infringing work, the court must also compare the manuals as a whole. See Landsberg v. Scrabble Crossword Game Players, Inc., 736 F.2d 485, 489 (9th Cir. 1984); see also Meridian Project Sys., Inc. v. Hardin Const. Co., LLC, 426 F. Supp. 2d 1101, 1113-14 (E.D. Cal. 2006) (Damrell, J.) (comparing documents as a whole).

that a document that had substantial similarities on 15 pages of an 18-page help file did not rise to the level of copyright infringement. The amount of copying here, even if the court accepted each purported instance of paraphrasing as true, does not appear to rise to even that level. Plaintiff provides no case supporting its position that the extent of purported paraphrasing here rose to the level of infringement in a similar type of work.

Second, plaintiff cannot claim copyright protection over the vast majority of ideas in the manuals because they are facts, including mathematical formulas and scientific theory. For example, plaintiff repeatedly points to defendants' "Planning and Estimating" sections that detail geometric formulas and defendants' use of a table that converts inches to feet (both as a fraction and decimal). These are non-copyrightable facts. Further, under the merger doctrine, "[w]hen an idea or an expression are indistinguishable, or 'merged,' that expression will only be protected against nearly identical copying." Apple Computer, 35 F.3d at 1444. A manual could only express mathematical equations, science, and the conversion of inches to feet in a very limited number of ways and therefore the merger doctrine likely applies. Plaintiff fails to show why the merger doctrine does not apply to these purported instances of paraphrasing.

Third, even though infringement of a factual work must "amount to verbatim reproduction or very close paraphrasing," Landsberg, 736 F.2d at 488, plaintiff fails to explain how many of the purported instances of infringement amount to very close

paraphrasing. For example, in the C-36 Plumbing Manual, plaintiff argues that the Plumber Tools sections are very closely paraphrased, but this appears to be an inaccurate statement. Plaintiff's manual discusses the characteristics of PVC pipes, such as the fact that it "resists acids and bases," but defendants' manual discusses what types of projects PVC pipes are useful for and the different PVC pipe sizes. (Cohen Decl., Ex. II at 11; id., Ex. JJ at 9.) While both manuals discuss PVC pipes, which are relevant to that licensing exam, they discuss different aspects of PVC pipes.

Further, in the C-39 Manual, which prepares students for the Roofing trade license exam, plaintiff argues defendants' description of roof slope and pitch paraphrases plaintiff's information. However, plaintiff only provides a brief, four-line overview of how to calculate slope and pitch; whereas defendants have a detailed three-page explanation of how to calculate slope and pitch with other information and hypothetical related to slope and pitch. (Compare id., Ex. LL at 9, with id., Ex. MM at 4-6.) In the C-39 Manual, plaintiff also argues that defendants use the same graphic as plaintiff; however, these images actually have slight differences.

There are, however, multiple instances of copying or very close paraphrasing. For example, both C-8 Manuals state: "Ramps serving an occupant load of less than 50 must be at least 36 inches wide. For greater occupancies, ramps must be at least 44 inches wide." (Compare id., Ex. Q at 35, with id., Ex. R at 28.) The Private Sewage Disposal Systems and Filler Metal sections of defendants' C-36 Manual also very closely paraphrase

8

plaintiff's manual. (Compare id., Ex. II at 15, 33, with id., Ex. JJ at 15, 23.) However, the work must be evaluated as a whole, and isolated instances of copying are insufficient to find that plaintiff has a likelihood of success on its infringement claim.³ See also Meridian, 426 F. Supp. 2d at 1115 (finding no copyright infringement where 15 pages of an 18-page document had similarities with a copyrighted document).

Plaintiff argues that copyright protects the selection and arrangement of this information. While copyright does protect the compilation of information, "[a] compilation may lack the requisite creativity where . . . industry conventions or other external factors dictate selection." Phantomalert, Inc. v. Google Inc., Case No. 15-cv-03986-JCS, 2015 WL 8648669, at *12 (N.D. Cal. Dec. 14, 2015). The arrangement of these manuals is based, in part, on the California State Licensing Board's ("CSLB") study guides for the related examinations. (See Vorontsov Decl. ¶ 6, Ex. 2.) Generally, the CSLB study guides are broken down into the major categories of planning and estimating, then trade-specific topics, and then health and safety. (See id., Ex. 2.) Both parties acknowledge that this is the general format that the manuals also follow. (See Pl.'s Mem. 14:2-3.)

Plaintiff points to various subsections that both

---

³ Plaintiff's Motion also discusses several other instances of near-verbatim recitation. However, the majority are from prior draft versions of defendants' manuals that they no longer use. (See Leonid Vorontsov Dep. 147:7-17 (Docket No. 50-2)); cf. See, 711 F.2d at 142 (finding earlier drafts irrelevant to the question of infringement).

9

plaintiff's manuals and defendants' manuals contain, which the CSLB study guides do not list.  However, the arrangements of plaintiff's and defendants' guides are not identical and each manual contains large amounts of information that is not in the other manual.  While the guides are generally one page and do not identically mirror the format of the manuals, the CSLB study guides provide guidance for these manuals and the distinction between the manuals and the study guides is not so great that this alone shows substantial similarity.

Plaintiff lastly points to the fact that plaintiff and defendants' manuals are both "bound along the left side with 19-hole binding and a black binding comb" and the "practice tests and update questions [are] on golden rod paper."  (Pl.'s Mem. 14:3-6.)  Plaintiff cannot copyright these non-textual utilitarian features of its manuals and tests.  See Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 202-03 (9th Cir. 1989) (holding non-textual utilitarian features of organizers, such as special hinges and graph paper, were not copyrightable). Plaintiff has thus not shown that it is likely to satisfy the extrinsic test.

Plaintiff has also not shown that it is likely to meet the intrinsic test.  Plaintiff does not distinguish between the extrinsic and intrinsic tests, but appears to argue that it is likely to meet the intrinsic test because "the overall look and feel of defendants' manuals is the same as [plaintiff]'s manual." (Pl.'s Mem. 13:26-27.)  Plaintiff's argument is largely limited to pointing to the manuals' similar formats and utilitarian aspects.  While there do appear to be some similarities, this

argument, without more, fails to show how a "reasonable audience would finds the works substantially similar in total concept and feel." Gold Glove, 648 Fed. App'x at 680. Plaintiff has not shown that it is likely that a reasonable audience or jury would find these manuals are substantially similar in total concept and feel.

Because plaintiff has not met its burden of showing the likelihood of success on the merits of its copyright infringement claim, preliminary injunctive relief must be denied, regardless of the court's finding with respect to irreparable injury, balance of the hardships, or the public interest. See Winter, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (emphasis added)).

B.  Irreparable Harm

If plaintiff's copyright infringement claim is ultimately found to have merit, it does appear that defendant's use of the allegedly infringing materials between now and the time of trial is likely to cause harm to plaintiff which may not entirely be compensable by monetary damages. Nevertheless, a plaintiff's delay in seeking a preliminary injunction "undercut[s] [plaintiff's] claim of irreparable harm." See Garcia v. Google, Inc., 786 F.3d 733, 746 (9th Cir. 2015) (en banc); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before

seeking a preliminary injunction implies a lack of urgency and irreparable harm.").

Here, notwithstanding plaintiff's discovery of defendants' alleged infringement in May 2016 and plaintiff's filing of this action in June 2016, plaintiff waited until June of this year to file this Motion for a preliminary injunction. Plaintiff argues the delay is justified because it did not know the extent of defendants' purported infringement until recently. This excuse does not justify plaintiff's delay. Plaintiff's thirteen-month delay from the discovery of the alleged infringement and almost twelve-month delay from the filing of this suit weighs heavily against a finding of irreparable harm. See Valeo Intellectual Prop., Inc. v. Data Depth Corp., 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (three month delay between filing suit and seeking injunctive relief was inconsistent with a finding of irreparable harm); Playboy Enters., Inc. v. Netscape Commc'ns Corp., 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) (five month delay weighed against a finding of irreparable harm in a trademark case).

The court notes that trial on the merits is scheduled to begin in nine months. Whatever harm may befall plaintiff during that time is unlikely to be any different than the harm it may have sustained during the year plaintiff delayed in bringing this motion.

IT IS THEREFORE ORDERED that plaintiff's Motion for a preliminary injunction (Docket No. 49) be, and the same hereby is, DENIED.

Dated: July 11, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE